IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KONJIT FANTAYE, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 24-3125 |
| | : | |
| ANTONY BLINKEN, *et al.*, | : | |
|     Defendants. | : | |

| | |
|---|---|
| **Diamond, J.** | **June 2, 2025** |

<u>MEMORANDUM OPIINION</u>

    American citizen Konjit Fantaye challenges the policy by which the Government would reclassify her son Henok Tefera—an Ethiopian citizen seeking to emigrate to the United States—from a more to a less desirable visa status.  Because Ms. Fantaye has not alleged a redressable injury that is actual or imminent, I will dismiss without prejudice for lack of standing.

**I.      BACKGROUND**

    United States citizens and Lawful Permanent Residents ("green card" holders) may petition for their children living abroad to join them in the United States.  (Doc. No. 31 ¶ 13); 8 U.S.C. §§ 1154(a)(1)(A)(i); (a)(1)(B)(i).  The petitioner must first complete "Form I-130" and submit it to United States Citizenship and Immigration Services.  (Doc. No. 31 ¶¶ 13-14); 8 C.F.R. § 204.1(a)(1).  If USCIS determines that the beneficiary is a bona fide child of the petitioner, it will approve the Form and send it to the State Department for adjudication.  (Doc. No. 31 ¶ 14); 8 C.F.R. § 204.2(d).  The Department will not act on the petition, however, until the case is "documentarily complete": the beneficiary has submitted all fees and forms, and a visa is available.  (Doc. No. 25 at 5); 9 FAM 504.4-5(A)(1).  Only minor children of U.S. citizens, designated "IR" (for "immediate relative"), are entitled to receive visas immediately.  (Doc. No. 31 ¶ 19); 8 U.S.C. § 1151(b)(2)(A)(i).  Adult children of U.S. citizens are designated "F1" and are subject to a statutory visa cap, and so must wait until a visa becomes available.  (Doc. No. 31 ¶ 18); 8 U.S.C.

§ 1153(a)(1). Although subject to change, the wait time is currently nine years. See Visa Bulletin for June 2025, U.S. State Dep't., https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2025/visa-bulletin-for-june-2025.html (last updated May 2, 2025); (see also Doc. No. 31 ¶ 17; Doc. No. 26 at 7). Similarly, minor children of "green card" holders, designated "F2A," are subject to a statutory cap and must also wait until visas are available. (Doc. No. 31 ¶¶ 17, 18); 8 U.S.C. § 1153(a)(2)(B). The visa clock begins to run on the day the petitioner files Form I-130—the petition's "priority date." 8 U.S.C. § 1153(e)(1); 8 C.F.R. § 204.1(b). If a Lawful Permanent Resident petitioner becomes a U.S. citizen before a visa is available, the beneficiary can be reclassified to IR or F1 status. 8 U.S.C. § 1154(k)(1). Once a visa is available and the documentation is complete, the beneficiary may be scheduled for an interview in his home country with an American consular officer, who then decides whether to issue an immigrant visa. (Doc. No. 31 ¶ 21); 8 C.F.R. §§ 42.62, 42.81(a).

Because beneficiaries often must wait years until their cases have complete documentation, Congress passed the Child Status Protection Act to prevent minor children from aging into a less-preferable status. (Doc. No. 31 ¶ 25.) CSPA creates a "statutory age" (distinct from a beneficiary's biological age) that is calculated by subtracting "the age of the [beneficiary] on . . . the date on which an immigrant visa number became available for the [petitioner] parent" by "the number of days in the period during which the applicable petition . . . was pending." (Id.); 8 U.S.C. § 1153(h)(1). This effectively freezes the beneficiary's age to what it was on his petition's priority date.

As alleged, Fantaye (a native of Ethiopia), after her divorce from an Ethiopian national, married an American citizen and was granted Lawful Permanent Resident status on June 30, 2016. (Doc. No. 31 ¶¶ 32-36.) On November 18, 2018, she filed a Form I-130 petition on behalf of Mr.

2

Tefera—her son by her first marriage—who was fifteen years old on the petition's priority date. (Id. ¶¶ 37, 43.) Because Fantaye had erroneously noted on her own visa application that she had no children, the Form was not approved until January 25, 2024; Tefera was then biologically over twenty-one. (Id. ¶¶ 35, 38, 42, 43.) Tefera was nonetheless classified as an F2A beneficiary because his CSPA statutory age was still that of a minor. (Id. ¶¶ 42, 43; Doc. No. 31-1 at *2.)

Fantaye became a naturalized American citizen on February 13, 2024. (Doc. No. 31 ¶ 44.) On May 24, 2024, she asked the State Department to adjust Tefera's status to IR: i.e., that afforded to minor children of U.S. citizens. (Id. ¶ 45; Doc. No. 31-1 at *6.) On May 28, 2024, the State Department responded that it had instead reclassified Tefera to F1: i.e., the status for adult children of U.S. citizens. (Doc. No. 31 ¶ 46; Doc. No. 31-1 at *8.)

On July 17, 2024, Fantaye filed suit under the Administrative Procedure Act against the Secretary of State and the State Department, alleging that they had arbitrarily and capriciously reclassified her son to F1, and that the Department's interpretation of "age" was impermissible rulemaking. (Doc. No. 1); 5 U.S.C. §§ 551-59. On September 24, 2024, however, the State Department notified Fantaye that it had preliminarily reclassified Tefera to IR status pending the final adjudication of Fantaye's petition. (Doc. No. 31 ¶ 47.) Tefera could thus "pay required fees, submit required documents, and ultimately be scheduled for a visa interview after his case becomes documentarily qualified and there is an interview spot available in Addis Ababa[, Ethiopia]." (Doc. No. 31-1 at *14.) Since then, a visa has been immediately available for Tefera due to his provisional IR status; the next stage has been to schedule his interview.

The Government filed a Motion to Dismiss for mootness on October 18, 2024. (Doc. No. 14.) Again proceeding under the APA, Fantaye filed the instant Amended Complaint on November 8, 2024, now adding as Defendants the Secretary of Homeland Security, the Department of

3

Homeland Security, and the Attorney General. (Doc. No. 19; see also Doc. Nos. 29, 30, 31.) She alleges that despite Tefera's preliminary reclassification to IR status, Government policy will "require the consular officer who makes the final determination to categorize this application as F1" after Tefera finally has an interview. (Doc. No. 31 ¶ 47.) As a result, instead of immediately being approved for an immigrant visa, Tefera will purportedly "have to wait at least an additional year before consular processing could begin again." (Id. ¶ 48.)

On December 5, 2024, the Government filed a second Motion to Dismiss under Rule 12(b)(1) for lack of standing and lack of ripeness, or, in the alternative, under Rule 12(b)(6). (Doc. No. 25.) The matter is fully briefed. (Doc. Nos. 26, 32.)

## II.   LEGAL STANDARDS

I must dismiss if the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). I must first determine if a Rule 12(b)(1) motion to dismiss for lack of jurisdiction "presents a 'facial' attack or a 'factual' attack on the claim at issue." Const. Party v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). In a facial attack, the sufficiency of the pleadings is contested; in a factual attack, the sufficiency of jurisdictional facts is contested. Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015). Because the Government here raises a facial attack, I must "apply the same standard of review [I] would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." Aichele, 757 F.3d at 358.

I must thus accept Fantaye's factual allegations, disregard legal conclusions or mere elements recitations, and then determine whether the allegations make out a "plausible" claim. Fowler v. PMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

4

### III. STANDING

"Standing is an 'irreducible constitutional minimum.'" Road-Con, Inc. v. City of Philadelphia, 120 F.4th 346, 354 (3d Cir. 2024) (quoting Uzuegbunam v. Preczewski, 592 U.S. 279, 285 (2021)). To establish standing, "a plaintiff must establish three elements: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant . . . (3) that is likely redressed by a favorable judicial decision." Yaw v. Delaware River Basin Comm'n, 49 F.4th 302, 310 (3d Cir. 2022) (citing Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). "With regard to the injury-in-fact prong, the injury must be 'actual or imminent, not "conjectural" or "hypothetical."'" Clemens v. ExecuPharm Inc., 48 F.4th 146, 152 (3d Cir. 2022) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)).

The Government argues that Fantaye lacks standing because she is a third party seeking "to vindicate 'the legal rights or interests of'" her son, "which courts generally do not allow." (Doc. No. 25 at 10 (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)). I disagree. Fantaye is not asserting third-party standing on behalf of her son, the visa beneficiary. Rather, she is seeking to vindicate her own rights as a visa petitioner. Li v. Renaud, 709 F. Supp. 2d 230, 236 n.3 (S.D.N.Y. 2010), aff'd, 654 F.3d 376 (2d Cir. 2011) ("A District Court action for judicial review of an administrative decision concerning a Form I-130 Petition may be brought only by the Petitioner[,] not by the Beneficiary."); Shalom Pentecostal Church v. Napolitano, No. 11-4491, 2013 WL 162986, at *3 (D.N.J. Jan. 15, 2013) ("[O]nly the petitioner, and not the petition's beneficiary, [is] considered an 'affected party' with 'legal standing' to file an appeal of an unfavorable visa petition decision."); Jieling Zhong v. Novak, No. 08-4597, 2010 WL 3302962, at *7 (D.N.J. Aug. 18, 2010) ("The Court will . . . review Plaintiffs' arguments on the merits on behalf of . . . the petitioner, [who] has standing to challenge USCIS's decision.").

Fantaye alleges that reclassifying Tefera will cause her to "face further delay in reunifying with her son, whom she has not seen in many years." (Doc. No. 26 at 5.) She has Stage III breast cancer, and "[b]ecause of her treatment and the unstable political situation in her native Ethiopia, she cannot visit her son there; her only chance of reunification is if he comes to the United States. Time is of the essence, and she desperately wishes to be reunited with her son during this difficult period in her life." (Doc. No. 31 ¶ 4.) Such a delay may be cognizable as an injury in fact. See Abbas v. Dep't of Homeland Sec., No. 20-3192, 2021 WL 3856625, at *2 (D.D.C. Aug. 29, 2021).

Fantaye nonetheless lacks standing, as the injury alleged is not "actual or imminent." An injury need not have already occurred to be "actual or imminent," but "threatened injury must be *certainly impending* to constitute injury in fact," and mere allegations of "*possible* future injury" are not sufficient. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (emphasis in original).

The Government argues that "[t]he alleged future injury here—a consular officer denying Mr. Tefera's visa application after classifying him in the F1 category—is possible, but it is not certainly impending." (Doc. No. 25 at 11.) Fantaye responds that "Mr. Tefera will 'certainly' be reclassified as an F1 visa holder at an interview," so her injury is "certainly impending." (Doc. No. 26 at 5.) I agree that Tefera will be reclassified as F1 after his interview. The Government acknowledges as much in its Motion to Dismiss. (See Doc. No. 25 at 15-25.) Even if Fantaye is correct, however, and this reclassification to F1 would not be permissible (and I do not address the question), any injury is not "certainly impending."

How soon Tefera will get a visa presently has nothing to do with whether he is or will be classified as IR or F1. Rather, the bottleneck is Tefera's consular interview. Because Tefera is provisionally classified IR, the petition is documentarily complete and he is now eligible for an interview. For reasons that neither Party clearly explains, however, he cannot schedule one. The

6

Government states only that Tefera is "ready to be scheduled for a visa interview with a consular officer once an interview becomes available," but that he must now "wait for a visa interview at the embassy, and it is not certain when that interview will take place." (Doc. No. 25 at 7, 12.) Fantaye agrees that "[t]here is no certainty or timeline as to when Mr. Tefera will receive a consular interview." (Doc. No. 26 at 6.) It appears, however, both from Ms. Fantaye's submissions and related State Department materials, that Ethiopia's civil war has caused adjudication delay. (See Doc. No. 31 ¶ 3 ("Because of . . . the unstable political situation in her native Ethiopia, she cannot visit her son there.")); accord Ethiopia Travel Advisory, U.S. State Dep't, https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/ethiopia-travel-advisory.html (last updated July 21, 2023) ("Reconsider travel to Ethiopia due to sporadic violent conflict, civil unrest, crime, communications disruptions, terrorism and kidnapping in border areas."); Petersen v. Boeing Co., 715 F.3d 276, 281 (9th Cir. 2013) (Court may take judicial notice of State Department travel advisories).

In these circumstances, even if Tefera is reclassified as F1, his priority date could well come due before he is granted an interview, which would mean that Fantaye would suffer no additional delay because of his reclassification. Fantaye filed Form I-130 on November 18, 2018, and currently, an F1 designee must wait some nine years to receive a visa, although that may change. (Doc. No. 31 ¶¶ 17, 18, 37; see also Doc. No. 26 at 7.) Her argument that Tefera's consular interview may occur before then—causing Tefera to be reclassified as F1 and causing Fantaye to wait even longer for the petition's priority date to come due—is thus "conjectural or hypothetical," and not "sufficiently imminent" to make out an injury-in-fact. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014).

Fantaye also suggests that Tefera's reclassification will injure her financially. In her Amended Complaint, she alleges that both she "and her son . . . proceed[ed] with paying fees" related to the petition. (Doc. No. 31 ¶ 47.) The exhibit she includes, however, indicates that only "the beneficiary can pay required fees." (Doc. No. 31-1 at *14; see also Doc. No. 31 ¶ 16.) In any event, her pleading includes no allegation that she is entitled to compensation for any expenditures she might have made. (See Doc. No. 31 at 17 ("Prayer for Relief").) Rather, in opposing the instant Motion to Dismiss, she urges for the first time that she "will lose the money that she has paid" in "fees"—some $1,100—"to process her petition" if Tefera is reclassified to F1 after his consular interview. (Doc. No. 26 at 2, 5, 9; Doc. No. 26-1.) Such a dilatory "amendment" to her Amended Complaint is not permissible. See Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Moreover, Fantaye bases her claims exclusively on the Administrative Procedure Act. (Doc. No. 31 ¶¶ 49-64.) "[B]ut the APA does not authorize suits seeking 'money damages' against the Government." Jibril v. Mayorkas, 101 F.4th 857, 870 (D.C. Cir.) (citing 5 U.S.C. § 702). Accordingly, even if her putative damages claim were allowed, her monetary injury may not be redressed in this lawsuit. See Spokeo, 578 U.S. at 338 (the third element of standing is redressability); DeSilva v. Donovan, 81 F. Supp. 3d 20, 24, 25 (D.D.C. 2015) ("Plaintiffs' injuries are not redressable" where they seek "an award of money damages," as "plaintiffs who seek review under the APA may only seek relief 'other than money damages.'") (citing 5 U.S.C. § 702).

In sum, Fantaye lacks standing on both imminence and redressability grounds.

### IV.     CONCLUSION

Fantaye asks me to order Tefera's reclassification to a status that has no waiting period for immigration visas, even though that reclassification will provide her with no relief until a consular officer interviews Tefera and then recommends the issuance of a visa—events that presently cannot take place. If and when those events finally occur, Tefera may well be eligible for an immediate visa, regardless of whether he is designated F1 or IR.

In these circumstances, Fantaye's supposition respecting how her petition will be processed and adjudicated does not "certainly" make out an "actual or imminent" injury. Accordingly, I am compelled to dismiss her Amended Complaint without prejudice for lack of standing. In light of my decision, I need not address the Government's ripeness and related arguments.

An appropriate Order follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.