**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KONJIT FANTAYE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 24-3125** |
| | : | |
| **MARCO RUBIO, Secretary of State,** | : | |
| ***et al.*,** | : | |
| **Defendants.** | : | |

**Diamond, J.** **October 6, 2026**

## MEMORANDUM

While a "green card holder" in 2018, Plaintiff Konjit Fantaye filed a Visa Petition on behalf of her son, Henok Tefera. During the five years it took for the Petition to be processed, Mr. Tefera turned twenty-one and Ms. Fantaye became a naturalized citizen. Under the Child Status Protection Act, Tefera's age should have been frozen on the 2018 date Plaintiff filed the Petition. The State Department nonetheless reclassified Tefera's visa application to a less-preferable category reserved for the adult children of United States citizens. Because this violated the Administrative Procedure Act, I will order the Department to reclassify Tefera's visa application to the preferable category required by the Child Status Protection Act. 8 U.S.C. §§ 1151, 1153, 1154, 1157, 1158.

## I. BACKGROUND

United States citizens and Lawful Permanent Residents may petition for their children living abroad to join them in the United States. 8 U.S.C. §§ 1154(a)(1)(A)(i); (a)(1)(B)(i). A petitioner must first complete "Form I-130" and submit it to United States Citizenship and Immigration Services. 8 C.F.R. § 204.1(a)(1). If USCIS determines that the beneficiary is a bona fide child of the petitioner, it will approve the Form and send it to the State Department for adjudication. The Department will not act on the petition, however, until the case is "documentarily complete,"

meaning the beneficiary has submitted all fees and forms, and a visa is available. 9 FAM 504.4-5(A)(1). Only a minor child of a U.S. citizen, designated "IR" ("Immediate Relative"), is entitled to receive a visa immediately. 8 U.S.C. § 1151(b)(2)(A)(i). Adult children of U.S. citizens are designated "F1" and are subject to a statutory visa cap, and so must wait until a visa becomes available. 8 U.S.C. § 1153(a)(1). The wait time is currently over six years. See Visa Bulletin for September 2026, U.S. State Dep't., https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2026/visa-bulletin-for-september-2026.html (last updated August 10, 2026). Similarly, the minor child of a "green card holder" is designated "F2A," and is also subject to a statutory cap and so must wait until a visa is available. 8 U.S.C. § 1153(a)(2)(B). Once the documentation is complete or a visa is available, the beneficiary may be scheduled for an interview in his or her home country with an American consular officer, who then decides whether to issue an immigrant visa. 8 C.F.R. §§ 42.62, 42.81(a).

Congress passed the Child Status Protection Act to help minor children who would otherwise "age out" of a preferred "IR" visa category. Pub. L. No. 107-208, 116 Stat. 927 (2002). The CSPA thus creates a "statutory age" that is calculated by subtracting "the age of the [beneficiary] on . . . the date on which an immigrant visa number became available for the [petitioner] parent" by "the number of days in the period during which the applicable petition . . . was pending." 8 U.S.C. § 1153(h)(1). This effectively freezes the beneficiary's age at what it was on his petition's priority date while the petition is pending approval.

Ms. Fantaye is an Ethiopian native and naturalized United States citizen. (Doc. Nos. 73 ¶ 14; 75 ¶ 3). On November 21, 2018, while still a Licensed Permanent Resident, she filed an I-130 Petition on behalf of Tefera, her biological son. (Doc. No. 54, Ex. A). November 21, 2018, thus

became Tefera's "priority date." As he was born January 17, 2003, his CSPA "statutory age" was fixed at fifteen pending the Petition's approval. (Doc. No. 68 at 3); 8 U.S.C. §§ 1153(e)(1), (h)(1); 8 C.F.R. § 204.1(b). On January 25, 2024, the Petition was approved: a processing time of five years, two months, and four days (excluding the day the Petition was approved). (Doc. Nos. 54, Ex. A.; 77 ¶ 2.) Because on January 17, 2024 (during processing) Tefera turned twenty-one, absent CSPA protections, he would no longer be a child for visa classification purposes. See 8 U.S.C § 1101(b)(1) ("The term "child" means an unmarried person under twenty-one years of age.").

Shortly after she naturalized on February 13, 2024, Fantaye invoked the CSPA and asked the State Department to adjust Tefera's status from F2A (that of minor children of LPRs) to IR (that of minor children of U.S. citizens). (Doc. Nos. 77 ¶ 3; 54, Ex. C); 8 U.S.C. § 1151(f)(2). The State Department instead reclassified Tefera as F1—an adult child of a U.S. citizen. (Doc. No. 54, Ex. D.)

In her initial Complaint, Fantaye challenged Tefera's F1 visa classification under the Administrative Procedure Act. 5 U.S.C. §§ 551(4), 553, 706(2)(A); (Doc. No. 1.) The State Department then notified Fantaye that it had provisionally reclassified Tefera as IR, but acknowledged that it would again reclassify Tefera as F1 at any required visa interview. (Doc. No. 54, Ex. F.)

I dismissed Fantaye's Complaint because in these circumstances, Fantaye could not allege that her injury was "actual or imminent." (Doc. No. 34 at 6.) I explained that Tefera's "priority date could well come due before he is granted an interview, which would mean that Fantaye would suffer no additional delay because of his classification." (Id. at 7.)

Months later, Fantaye filed a Rule 60(b) Motion to Reopen, attaching an email from the American Consulate in Ethiopia scheduling Tefera's interview. (Doc. No. 47.) On the interview

date, Fantaye's Counsel informed the Court that at Tefera's scheduled interview time, he had been reclassified as F1, and his application placed into "administrative processing." (Doc. Nos. 49–52.) Accordingly, I granted Fantaye's Motion, and Fantaye filed her Second Amended Complaint. (Doc. Nos. 53, 54.) The Government unsuccessfully moved to dismiss, arguing that Fantaye's claims are nonjusticiable under the Consular Nonreviewability Doctrine and, in the alternative, that the consular officer properly denied the visa application. (Doc. No. 58 at 1.) The Government has since answered Fantaye's Second Amended Complaint. (Doc. No. 64.)

The Parties now cross-move for summary judgment. (Doc. Nos. 71, 74.) They have jointly stipulated that only legal issues are presented. (Doc. No. 66.)

## II. LEGAL STANDARDS

Upon motion of any party, summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must initially show the "absence of any genuine issues of material fact." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quotations omitted). An issue is material only if it could affect the result of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving party," and take every reasonable inference in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after viewing all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. See Celotex, 477 U.S. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The opposing party must support each essential element with concrete evidence in the record.

See Celotex, 477 U.S. at 322-23. This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (restating Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976)).

When deciding cross motions for summary judgment, I must "consider each motion separately, drawing inferences against each movant in turn." Alford v. Hartford Life Ins. Co., No. 07-4527, 2008 U.S. Dist. LEXIS 43654, at *13-14 (E.D. Pa. June 3, 2008) (citing Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996)). Because I will grant Fantaye's Motion, I will view the facts— which are undisputed— in the light most favorable to the Government. Haidak v. Univ. of Mass. at Amherst, 299 F. Supp. 3d. 242, 249 (D. Mass. 2018).

## III. DISCUSSION

The Government argues that: (1) judicial review of Tefera's visa classification is precluded by consular nonreviewability; (2) it has no mandatory duty to re-adjudicate Tefera's visa application; and (3) its classification is lawful and consistent with Board of Immigration Appeals precedent. (Doc. No. 71.) Fantaye argues that Tefera's visa classification is properly subject to judicial review, and that the Government's classification is contrary to 8 U.S.C. § 1151(f)(2). (Doc. Nos. 74, 78.)

The Government largely repeats arguments from its earlier Motion to Dismiss that I rejected. (Doc. Nos. 58, 63, 71.) In the Government's view, I am obligated to revisit those rulings because "a motion for summary judgment is reviewed under a much more stringent standard than a motion to dismiss for failure to state a claim"—twice offering Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) for support. (Doc. No. 71 at 10, 14.) This is simply incorrect. Fowler's more stringent scrutiny only applies to disputed factual allegations. See, e.g., Wiest v. Tyco Elecs. Corp.,

812 F.3d 319, 330 (3d Cir. 2016) ("[A]t the motion-to-dismiss stage of proceedings a district court is obligated to accept the allegations in a plaintiff's complaint as true, it does not accept mere allegations as true at the summary judgment stage."). Because the Parties here do not dispute any material facts, Fowler's stringent scrutiny requirement is inapplicable. (Doc. No. 66.) Although the Government thus presents no basis for reconsideration, in an abundance of caution, I will again explain my earlier rulings.

**A. Consular Nonreviewability**

This Doctrine bars judicial review of discretionary visa denials. It does not, however, "preclude [a plaintiff] from challenging the Government's failure to decide" or authority to decide. Nine Iraqi Allies v. Kerry, 168 F. Supp. 3d 268, 291 (D.D.C. 2016) (citing Patel v. Reno, 134 F.3d 929, 932 (9th Cir. 1997)). I thus have no authority to review the denial of the visa because that issue is solely a matter of Government discretion. Dep't of State v. Muñoz, 602 U.S. 899, 907 (2024) ("The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those decisions."). Yet, courts may hear "challenges [to] the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion." Patel, 134 F.3d at 931–32; see also Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 13 (D.D.C. 2022) ("[C]onsiderations of this type implicate political considerations to a far lesser extent; the Court is not asked to exercise . . . the sovereign powers to exclude aliens.").

Here, Fantaye does not challenge any matter of consular discretion: reclassification of a visa is thus subject to judicial review. Bimbo Bakeries USA, Inc. v. Rubio, 771 F.Supp.3d 584, 589–90 (E.D. Pa. 2025) ("Because the Embassy has a nondiscretionary duty to issue or refuse to issue a visa,

consular nonreviewability does not bar a challenge to the agency's delay in discharging its mandatory duty."); see Teles de Menezes v. Rubio, 156 F.4th 1, 10 (1st Cir. 2025) ("[T]he reclassification of a visa petition, is, in general, subject to judicial review."); Cuthill v. Blinken, 990 F.3d 272, 278, 285 (2d Cir. 2021) (reviewing the reclassification of a visa petition from the F2A to F1 category); Dekovic v. Rubio, 169 F.4th 1002, 1012–13 (10th Cir. 2026) (same).

Fantaye challenges "Defendants' designation of the Beneficiary as an F1 adult child of a U.S. citizen," and "Defendants' interpretation of the term 'age' as set forth in the Foreign Affairs Manual." (Doc. No. 54 ¶¶ 54, 59); see 5 U.S.C. § 706(2)(A). Accordingly, Fantaye is permissibly "challenging the consul's authority to suspend [her son's] visa application[]." Patel v. Reno, 134 F.3d 929, 932 (9th Cir. 1997).

Finally, judicial review is not barred even though the "practical consequence of the reclassification" is the refusal of Tefera's visa application. Teles de Menezes, 156 F.4th at 10 (consular nonreviewability is not a barrier to judicial review of reclassification even when the "practical consequence of the reclassification" is visa denial); Getson v. Blinken, No. 23-4027, 2025 U.S. Dist. LEXIS 132974, at *36 (E.D. Pa. July 14, 2025) (consular nonreviewability "does not preclude judicial review . . . when a visa application has been provisionally refused pending administrative processing."); (Doc. No. 54 ¶ 50.)

In sum, because Fantaye permissibly invoked this Court's jurisdiction, I will deny the Government's Motion for Summary Judgement on the basis of non-reviewability.

**B. Compelling Agency Action**

The Government next argues that because "the consular officer took the precise action directed by . . . regulation," it has "fulfilled [its] duty to Plaintiff, [and] Plaintiff cannot secure relief under the APA." (Doc. No. 71 at 14–16.) The Government here misstates Fantaye's challenge. She "is not challenging a visa denial or administrative lollygagging." (Doc. No. 63 at 4.) She is challenging Tefera's F1 classification as an agency action "not otherwise in accordance with the law." 5 U.S.C. § 706(2)(A). If the Government incorrectly reclassified Tefera, then it may be compelled to correct this error. See Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 63 (2004) ("[T]he only agency action that can be compelled under the APA is action legally required."). Closing the door when an erroneous classification leads to a visa denial "would effectively insulate a rights-determining agency decision from judicial review." Dekovic, 169 F.4th at 1013.

Because the relief Fantaye seeks is permissible, I will deny the Government's Motion for Summary Judgment on that ground.

**C. 8 U.S.C. § 1151(f)(2)**

The Government next argues that Tefera was correctly classified as F1 because "age" in 8 U.S.C. § 1151(f)(2) refers to the F2A beneficiary's biological age at the date of his parent's naturalization. (Doc. No. 71 at 17-24.) Fantaye argues that this reference to "age" instead means the beneficiary's statutory age calculated under § 1153(h)(1). The four Circuits that have addressed this question concluded that 8 U.S.C. § 1151(f)(2)'s reference to "age" means the beneficiary's statutory age. Dekovic v. Rubio, 169 F.4th 1002 (10th Cir. 2026); Teles de Menezes v. Rubio, 156 F.4th 1 (1st Cir. 2025); Cuthill v. Blinken, 990 F.3d 272 (2d Cir. 2021); Tovar v. Sessions, 882 F.3d 895 (9th Cir. 2018). I agree with the reasoning of these decisions.

Under CSPA, when a petition is initially filed under F2A and "is later converted, due to the naturalization of the parent, to a petition to classify the [beneficiary] as [IR]," whether the beneficiary meets the age requirement for IR status is determined "using the age of the [beneficiary] on the date of the parent's naturalization." 8 U.S.C. § 1151(f)(2).

The Government urges me to give "age" as used here its "common, ordinary meaning" of biological age. (Doc. No. 71 at 20.) I agree that age "standing in isolation, normally means biological age." Cuthill, 990 F.3d at 279. Yet, I "must read the words in their context and with a view to their place in the overall statutory scheme." King v. Burwell, 576 U.S. 473, 486 (2015). In adopting the CSPA, Congress explicitly provided for a statutory age classification for F2A beneficiaries. 8 U.S.C. §§ 1153(a)(2)(A), (h). Accordingly, because § 1151(f)(2) "refers solely to F2A beneficiaries," the "best textual reading" of "the age of the [F2A beneficiary] on the date of the parent's naturalization" is that "it refers to the F2A beneficiary's statutory age on such date." Cuthill, 990 F.3d at 280; 8 U.S.C. § 1151(f)(2).

The Government correctly notes that § 1151(f)(2) lacks any explicit cross-references to the age calculation in § 1153(h). Nonetheless, "[a]n explicit cross-reference is unnecessary when the . . . provisions are so closely related and form a cohesive whole." (Doc. No. 71 at 21); Tovar, 882 F.3d at 901. There is "a clear textual path" between the two provisions. Cuthill, 990 F.3d at 280. Section 1151(f)(2) references "the [age] determination described in § 1151(f)(1)." Section 1151(f)(1) then explicitly cross-references § 1101(b)(1), which provides the default rule for calculating age. Yet, § 1153(h) explicitly modifies § 1101(b)(1) and provides that "[f]or purposes of [F2A visas], a determination of whether an alien satisfies the age requirement in [§ 1101(b)(1)] shall be made using" the provision's statutory formula. Cuthill, 990 F.3d at 280.

Defining age in § 1151(f)(2) as biological would also contravene CSPA's stated purpose. See United States v. Turkette, 452 U.S. 576, 580 (1981) ("[A]bsurd results are to be avoided."); In re Kaiser Aluminum Corp., 456 F.3d 328, 338 (3d Cir. 2006) ("A basic tenet . . . is that courts should interpret a law to avoid absurd or bizarre results."). As the Second Circuit explained, "[i]t is hard to imagine a piece of legislation that speaks with more unmistakable clarity of purpose than the CSPA." Cuthill, 990 F.3d at 284. "Congress's aim in enacting the CSPA was to 'address[] the predicament' of noncitizens who age out 'through no fault of their own[]' due to bureaucratic delays in the processing of a visa petition." Teles de Menezes, 156 F.4th at 17 (quoting H.R. Rep. No. 107-45, at 2). Moreover, "there is no question that the statutory scheme gives preference to sons and daughters of citizens over sons and daughters of LPRs." Cuthill, 990 F.3d at 281-82. Yet adopting the Government's proposed definition would penalize Tefera for both the Government's delay in processing his petition, and Fantaye's naturalization (because he would otherwise have remained in the far shorter F2A queue). See Visa Bulletin for September 2026, U.S. State Dep't., https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2026/visa-bulletin-for-september-2026.html (last updated August 10, 2026).

The Government nonetheless suggests that Congress intended to exclude from CSPA's age-out protection those F2A beneficiaries whose parents naturalize. (Doc. No. 71 at 23.) I agree with the Tenth Circuit that "[t]he Government has not and cannot provide any legislative history to support [this] hypothetical congressional intent argument." Dekovic, 169 F.4th at 1019. Moreover, the Government's argument implies a transfer process that does not exist. Section 1151(f)(2) permits an F2A petition to be converted to an IR petition, but no such statutory mechanism exists to convert an F2A petition to F1. Tovar, 882 F.3d at 903 ("Neither the regulation nor the statute

authorizes . . . conversion of an F2A petition into an F1 petition.”).

Finally, the Government emphasizes that Tefera’s F1 classification is consistent with its internal BIA precedent. Yet, the Courts “must exercise [] independent judgment in deciding whether an agency has acted within its statutory authority.” Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024). Here, “the irrationality of the result sought by the government shows conclusively that there is only one possible answer.” “Age” in § 1151(f)(2) refers to an F2A beneficiary’s statutory age under § 1153(h)(1). Tovar, 882 F.3d at 900; see also Dekovic v. Rubio, 169 F.4th 1002 (10th Cir. 2026); Teles de Menezes v. Rubio, 156 F.4th 1 (1st Cir. 2025); Cuthill v. Blinken, 990 F.3d 272 (2d Cir. 2021).

## IV. CONCLUSION

I will grant summary judgment in favor of Fantaye. Once again, the material facts are not disputed. Her son, Tefera, was born on January 17, 2003. (Doc. No. 68 at 3.) As of October 6th, 2026, he will be 8,663 days (almost 24 years) old. Fantaye submitted an I-130 petition on Tefera’s behalf on November 21, 2018. The Petition was approved January 25, 2024—1,891 days (some five years) later. (Doc. No. 77 ¶¶ 1–2.) Under § 1153(h)(1), Tefera’s statutory age on October 6, 2026 (calculated by subtracting his biological age from the administrative delay in processing his petition) will be 6,772 days or 18 years, 6 months, and 15 days. Tefera thus qualifies as the immediate relative child of his mother, Fantaye. 8 U.S.C. §§ 1101(b)(1), 1151(b)(2)(A)(i), 1151(f)(2).

An appropriate Order follows.

**AND IT IS SO ORDERED:**

*/s/ Paul S. Diamond*

**Paul S. Diamond, J.**